SEP 3 0 2019

9-26-2019

Magistrate Judge Nancy Joseph
United States Courthouse RM 249
517 East Wisconsin Ave
Milwaukee WI 53202

The Honorable Kevin G. Costello
McHenry County Circuit Court
2200 N Seminary Ave.
Woodstock, IL 60098

Judge Daniel Johnson
Walworth County Judicial Center
Room 3021
1800 County Trunk NN
P.O. Box 1001
Elkhorn WI 53121

Magistrate Judge David E. Jones
United States Courthouse Room 258
517 East Wisconsin Avenue
Milwaukee, WI 53202

Honorable Judge Pamela Pepper
United States Courthouse Room 208
517 East Wisconsin Avenue
Milwaukee, WI 53202

Honorable Judge J.D. Stadtmueller
United States Courthouse Room 471
517 East Wisconsin Avenue
Milwaukee, WI 53202

U.S. Attorney's Office
517 E. Wisconsin Ave, Ste 530
Milwaukee WI 53202

United States Federal Building and Courthouse
Clerk of Courts
517 E. Wisconsin Ave. Rm. 362
Milwaukee, WI 53202

Re: Cases 15-CR-115, 16-CR-100, 19-CV-00752, 19-CV-01319

Dear Honorable Judge Joseph:

I am in receipt of a "copy and paste" version of the government's filing sent to me via email and I look forward to the opportunity to respond to the government's false accusations.

My intentions are not to harass but to exercise my right to access to the courts, the right to redress grievances, the right to due process and equal protection.

I will address briefly, a number issues which I believe warrant an immediate response.

You will note that the government goes to great lengths to recite the 15-CR-115 Farmland (herein after 115Farmland) and 16-CR-100 Joan Bakley (herein after 100JoanB) convictions as a means of once again creating prejudice. Those convictions were obtained in violation of the laws of the United States. The government's motivation in bringing these filings is to prevent me from obtaining Brady and other exculpatory evidence through civil proceedings and the discovery process that I should have received prior to trial, evidence that will exonerate me.

I have consistently professed my innocence in the instant cases. I admitted guilt on only one day and that was the day I plead guilty, no doubt a result of my unmedicated bipolar illness of which there is a voluminous record. In each of the cases, the alleged victims and I did had executed, professionally drafted contracts that clearly spelled out the terms of those contracts. Each of the contracts contained non-reliance clauses which stated that those I did business with made their decision to do business with me based "only" on what was in the contract and not on any outside representations or pre-contractual representations. Despite this clear, concise and conspicuous language, the government alleged "off-the-record" oral misrepresentations. The number of cases brought against me is not a reflection of my behavior but, rather, the government and its agents willingness to be untruthful and coach witnesses into saying things that completely conflict with the written record.

I ask this honorable Court to begin considering and verifying the following, pending my formal response.

Immediately following the Change-of-Plea Hearing, I informed attorneys Christopher Donovan and Martin Pruhs (standby counsel in the 115Farmland case ONLY) of my intent to withdraw my guilty pleas, as evinced by their time sheets. As the record will reflect, both the 115Farmland and 100JoanB Courts accepted and adopted Magistrate Jones's Report and Recommendations on the Change of Plea Hearings prior to expiration of 14 days, preventing me from raising objections and denying me my right to procedural due process.

You will also note from the record and the 2255 Habeas Corpus petition I filed May 21, 2019 in the 100JoanB case that, I had no attorney in the 100JoanB case. No attorney appears on the docket sheet for the 100JoanB case. No attorney filed an appearance in that case. No Faretta colloquy was performed to ensure any alleged waiver of counsel was made knowingly, intelligently and unequivocally. The earlier, October 13, 2015, waiver of counsel (for the 115Farmland and 100JoanB cases) which the government incorrectly refers back to throughout the balance of the proceedings was abandoned and revoked when I informed the Magistrate I no longer wished to proceed pro se (See 15-CR-137 DennisE Docket November 12, 2015). The earlier waiver was again abandoned and revoked in December 2015 when I allowed attorney Lebell to ascend from standby counsel to appointed counsel. The issue of waiver of counsel was never revisited as is required despite numerous substantial changes in circumstances. When I was indicted on the 100JoanB case June 28, 2016 and, subsequently arraigned shortly thereafter, no valid waiver of counsel existed. 115Farmland, Docket 91 verifies the fact that I did not wish to waive the right to counsel. Returning to the issues of the 100JoanB case, no attorney obtained the discovery. The absence of CJA vouchers in the record confirm the fact that no attorney was paid to represent me in the 100JoanB case. I was not a party to the plea negotiations. Attorneys Donovan and Pruhs have since admitted to not being appointed in the 100JoanB case. Attorneys Christopher Donovan and Martin Pruhs negotiated a plea agreement that had me plead guilty to a defective 100JoanB indictment. The 100JoanB indictment is, to this day, missing the essential elements of "knowing" or "with intent" from its introduction. How did attorney Martin Pruhs sign a plea agreement as my standby counsel when he was never appointed? This conviction cannot stand, with all due respect intended.

It was alleged in the 100JoanB case that, I phoned the Bakley family members frequently using a disguised voice. According to a Form 302 FBI Memorandum of Interview, Cindy Bakley recorded these calls. There is no documentary evidence supporting the government's alleged misrepresentations. All alleged misrepresentations were made by "Robert" (alleged me disguising my voice) in the telephone calls Cindy Bakley recorded. Unbelievably, according to the government, they don't have the recordings made by Cindy Bakley. According to the Bakleys and the government, when Cindy Bakley tried to play one of the recordings back for the FBI Agent, the voice on the recording was faint and indiscernible. In complete contradiction to this version of the facts, the government claims the disguised voice used in the Bakley case matches a disguised voice I allegedly used in the 115Farmland case. If the government doesn't have the recordings, how did they match the voices? If the voice was faint and indiscernible, how do they know I disguised my voice? How do they know the voice was a mid-Eastern dialect? It is my position that, the government either has the recordings and won't release them to me because they prove I did not disguise my voice and/or those recordings will be devoid of misrepresentations. According to 150 Responses to Request for Admissions answered by Cindy Bakley in the course of my litigation against the Bakley family in the McHenry County, Illinois civil proceedings, none of the Bakley family members ever appeared before a grand jury, never claimed that they were expecting a 10 million dollar settlement from my father's Errors and Omissions insures, never told the FBI they recorded me and never gave the recordings to the government. I sued the Bakley's as is my right for recording me illegally and requested the Court order the Bakley's to preserve the recordings and compel the Bakley's to produce them. According to AUSA Constantine's recent submission to the Court, Ms.

Bakley's recordings of "Robert" (allegedly me) did not violate Illinois law. What about federal law? If, as AUSA Constantine states in her Complaint "Such recordings would be evidence of that criminal activity" and "the calls did not violate Illinois Law" then why weren't they turned over in discovery? How many calls were recorded? When? From what location? Using whose equipment? You can see why the government does not want me litigating against the Bakleys. The record you have before you demonstrates, via the Bakley's attorney's (Steven J. Cuda) time sheets that, AUSA Proctor was impermissibly involved in the McHenry County civil proceedings and had the Bakleys refashion their Responses to the Request for Admissions 3 times to falsify the record.

You are witnessing prosecutorial misconduct at its boldest, with all due respect intended. I have filed grievances with the Wisconsin Supreme Court Office of Attorney Regulation informing them of these and other violations. I will forward the Court copies asking that they take judicial notice and remove AUSA's Proctor and Wall from these proceedings.

With regard to the 115Farmland case, it is alleged that Midwest and American Farmland Partners were fraud schemes created and controlled by me, that these businesses failed and as a result, investors lost $1,800,000. Approximately 3 days before trial, after more than 6 years of investigations, the government filed a letter with the Court asking the Court to dismiss all charges against my co-defendant Father Melvin Krumdick. The letter (115Farmland Docket 190) implies that Father Krumdick was not my co-conspirator as originally alleged but, was in fact, a victim. The governments' recent filing once again alleges Father Krumdick is my co-conspirator. Father Krumdick's May 29, 2019 Sworn Affidavit recently filed with the 115Farmland Court states that, no one has ever interviewed him. He states further that, he is neither my co-conspirator, nor my victim and that he, not I, created and controlled Midwest and American Farmland Partners. Further, that neither Midwest nor American were fraud schemes but were well thought out, expensive, business start-ups that now operate as publicly traded Farmland Partners, Inc. (FPI: NYSE). When the government realized that they had given me evidence that showed that Midwest and American Farmland Partners ultimately became publicly traded Farmland Partners, Inc., the government filed a superseding indictment which added in the words "knowing" and "with intent" into the introduction of the indictment (correcting the same deficiency the 100JoanB case still suffers from) and changed the end of the alleged scheme from August 2012 (as alleged in the original indictment) to September 2011 (as alleged in the superseding indictment). This impermissible narrowing violated the 5 factor test under Mankarious, United States v. Mankarious, 151 F.3d 694, 700-701 (7th Cir. 1998)(applying test from United States v. Cook, 745 F.2d 1311, 1316-17 (10th Cir. 1984) which establishes the circumstances under which an indictment may be narrowed. It bears mentioning that the Mankarious case is a case in which AUSA Joe Wall was lead prosecutor. AUSA Wall knew the narrowing he proposed in the 115Farmland case was not permitted and would rob me of my right to due process and a fair trial. Test factor number 5 precludes a narrowing that prevents a Defendant from offering evidence at trial that he would have otherwise have been able to offer prior to the narrowing. Twice during trial, I was prevented from offering evidence, based on the fact that the evidence was outside the scope of the scheme. That evidence proved conclusively that, Midwest and American Farmland Partners were taken public in 2014 as Farmland Partners, Inc (FPI: NYSE) by the individuals

the government alleged were victims and that no losses occurred. That evidence would have been allowed under the original indictment. More troubling is the question of how the government had jurisdiction to indict outside the 5 year statute of limitations or, why attorneys Donovan and Pruhs would suggest I plead guilty to a time-barred indictment. The governments superseding indictment alleged the scheme ended September 2011 making the expiration of the statute of limitations September 31, 2016. The superseding indictment was returned October 12, 2016, twelve days outside the statute of limitations. The original indictment was defective and missing essential elements, that being, the allegation that I and others acted knowingly and with an intent. A defective indictment does not toll the statute of limitations. Again, how did the government have jurisdiction to indict outside the statute of limitations? How did AUSAs Proctor and Wall go back in front of a successor, new, grand jury and, in the space of 2 weeks, convince this new grand jury that I and others acted knowingly and intentionally without usurping the authority of the grand jury and making the indictment their own? The 115Farmland case is a complex case. It involving 23 alleged victims, over 85,000 emails and over a terabyte of data.

These facts begin shed light on why the government has refused to give me access to the grand jury transcripts, an issue currently before the 7th Circuit Court of Appeals.

Had I had the grand jury transcripts and all the discovery, had I been properly medicated for my bipolar illness and/or, had I had effective assistance of counsel, I would not have plead guilty to these charges. I am innocent.

If you care to verify the things I allege further, look at the arraignment and plea on the 115Farmland superseding indictment? Who was my attorney? I had no attorney. If you recall, 115Farmland Docket 91 establishes the fact that I did not wish to waive my right to counsel. No attorney. No existing waiver of counsel and no Faretta colloquy in connection with the superseding indictment to ensure any alleged waiver was made knowingly, intelligently and unequivocally. No counsel at either sentencing hearing.

The government confidence in these convictions is misplaced, with all due respect intended.

I appreciate the Courts indulgence.


Respectfully submitted,

Todd Allen Dyer



Todd Allen Dyer
Reg# 05409-089
FCI Elkton
PO Box 10
Lisbon, OH   44432