UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TODD A. DYER,

    Petitioner,

v.             Case No. 19-cv-752-pp

UNITED STATES OF AMERICA,

    Respondent.

## ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 30), DENYING PETITIONER'S AMENDED MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 19), DENYING OTHER MOTIONS (DKT. NOS. 41, 42, 43, 45, 46, 47, 48), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE

On November 18, 2019, the petitioner filed an amended motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255; the motion challenges his 2017 fraud conviction in Case No. 16-cr-100. Dkt. No. 19. The court screened the amended motion under Rule 4 of the Rules Governing Section 2255 Proceedings and allowed the petitioner to proceed on his ineffective assistance of counsel claim. Dkt. No. 26. The respondent filed a motion to dismiss the petitioner's §2255 motion. Dkt. No. 30. The petitioner filed a brief in opposition to the respondent's motion to dismiss. Dkt. No. 33. Since then, the defendant has filed a series of other motions.

This order grants the respondent's motion to dismiss, denies the petitioner's motion to vacate, set aside or correct the sentence under §2255, declines to issue a certificate of appealability and dismisses the case. It also denies the motions the petitioner filed subsequent to the full briefing of his *habeas* motion.

1

## I.    Background

### A.    Underlying Criminal Cases

#### 1.    *Indictments*

In 2015 and 2016, the grand jury in the Eastern District of Wisconsin charged the petitioner with three distinct fraud schemes. See United States of America v. Todd Dyer, Case No. 15-cr-115; United States of America v. Todd Dyer, Case No. 15-cr-137; United States of America v. Todd Dyer, Case No. 16-cr-100.

On June 9, 2015, the grand jury indicted the petitioner on thirty-one counts of wire fraud and unlawful financial. Dyer, Case No. 15-cr-115, Dkt. No. 1. Three different attorneys represented the petitioner throughout the pre-trial proceedings, each eventually moving to withdraw. Id. at Dkt. Nos. 35, 86, 108. The petitioner filed many motions on his own, even when he was represented by counsel. See, *e.g.*, Id. at Dkt. Nos. 100, 106. The grand jury returned a superseding indictment on October 12, 2016, removing a codefendant and some of the counts from the original indictment. Id. at Dkt. No. 137; see also Id., Dkt. No. 140 at 1. On November 10, 2016 Magistrate Judge David Jones authorized the Federal Defender Services of Wisconsin to appoint stand-by counsel and an investigator to assist the petitioner. Id. at Dkt. No. 158.

On July 7, 2015, the grand jury returned an indictment charging the petitioner with wire fraud and unlawful financial transaction. Case No. 15-cr-137 at Dkt. No. 1. Soon after that case began, the petitioner's counsel moved to withdraw, id. at dkt. no. 13, and the petitioner moved to appear *pro se*, id. at dkt. no. 21. Judge Jones held a hearing on October 13, 2015, found the petitioner's waiver of his right to counsel to be knowing and voluntary and allowed the petitioner to represent himself. Id. at Dkt. No. 23. Judge Jones re-

2

appointed counsel a month later, when the petitioner indicated that he no longer wished to represent himself. Id. at Dkt. Nos. 31, 34. That attorney—and a subsequently-appointed attorney—later moved to withdraw. Id. at Dkt. Nos. 49, 59. The petitioner filed and litigated multiple *pro se* motions, including a motion to dismiss the indictment, id. at dkt. no. 61, a motion requesting bond, id. at dkt. no. 65, and a motion to supplement his motion to dismiss, id. at dkt. no. 66.

On June 28, 2016, the grand jury returned a thirteen-count indictment charging the petitioner with a third fraud scheme. Case No. 16-cr-100 at Dkt. No. 1. Judge Jones conducted an arraignment and plea hearing on July 13, 2016. Id. at Dkt. No. 6. At the hearing, the petitioner asked to proceed *pro se*, as he was doing in his other cases. Id. at 1. Without objection, Judge Jones granted the request. Id.; see also, *e.g.*, id. at dkt. no. 17. The petitioner subsequently litigated multiple *pro se* motions; he filed a speedy trial motion, id. at dkt. no. 10, and a motion to dismiss the indictment, id. at dkt. no. 25, along with seventy-two attachments, id. at dkt. nos. 26-1 through 26-72.

2. *Global Plea Agreement*

Two days into the jury trial in Case No. 15-cr-115, the petitioner informed the government that he wanted to enter a guilty plea. See United States v. Dyer, 892 F.3d 910, 912 (7th Cir. 2018). On December 7, 2016, the parties signed and filed plea agreements that resolved all three of the criminal cases. Case No. 15-cr-115 at Dkt. No. 198; Case No. 16-cr-100 at Dkt. No. 30. Under the agreements, the petitioner pled guilty to one count of wire fraud and one count of unlawful financial transactions in Case No. 15-cr-115, and one count of wire fraud (Count One) and one count of unlawful financial transactions (Count Nine) in Case No. 16-cr-100. Case No. 15-cr-115, Dkt. No.

3

198 at 20-21; Case No. 16-cr-100, Dkt. No. 30 at 17-18. In exchange, the agreement called for dismissal of the remaining charges in 15-cr-115 and 16-cr-100, and all charges in 15-cr-137. <u>Dyer</u>, 892 F.3d at 912.

The plea agreement filed in Case No. 16-cr-100 reflected the petitioner's knowledge and voluntariness of his decision to plead guilty; it stated that (1) the petitioner had "read and fully underst[ood] the charges contained in the indictment," Case No. 16-cr-100, Dkt. No. 30 at 1; (2) the petitioner "fully unders[tood] the nature and elements of the crimes with which he ha[d] been charged," <u>id.</u>; (3) the petitioner's standby counsel had "fully explained" to the petitioner the "charges and the terms and conditions of the plea agreement," <u>id.</u>; (4) the petitioner "voluntarily agree[d] to plead guilty," <u>id.</u> at 2; (5) the petitioner acknowledged, understood, and agreed that he was guilty of the offenses described in the agreement, <u>id.</u>; (6) "[t]he parties acknowledge[d] and underst[ood] that if this case were to proceed to trial, the government would be able to prove" the true and correct factual basis for the charges beyond a reasonable doubt, <u>id.</u>; (7) the parties understood and agreed with the maximum penalties associated with the charges, including special assessments, potential supervised release and restitution orders, <u>id.</u> at 3; (8) the petitioner understood that "the government's agreement to dismiss any charge [was] conditional upon final resolution of this matter," and if the "plea agreement [was] revoked or if the defendant's conviction ultimately [was] overturned, then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of the agreement," <u>id.</u> at 14; (10) the petitioner agreed that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in this agreement, to induce the [petitioner] to plead guilty," <u>id.</u>; (11) the

4

petitioner was not "on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair [his] ability to understand the terms or conditions of this agreement," id. at 15; and (12) the petitioner "reviewed every part of this agreement and ha[d] discussed all aspects of this case with [his] standby counsel and [was] satisfied that [his] standby counsel ha[d] provided effective assistance of counsel," id.

The government agreed that at the time of sentencing, it would move to dismiss the remaining counts of the indictment as to the defendant. Id. at ¶8. The plea agreement indicated that the government would be asking the sentencing court for a series of enhancements under the sentencing guidelines, but provided that the defendant would not necessarily be joining those recommendations. Id. at ¶¶17-18. The government agreed to "recommend a two-level decrease for acceptance of responsibility" under U.S.S.G. §3E1.1(a). Id. at ¶19. The government also agreed that if the court found that 2-level reduction appropriate, it would recommend an additional one-level decrease under U.S.S.G. §3E1.1(b). Id. Finally, the government agreed "to recommend a sentencing within the applicable sentencing guideline range as determined by the court, and that the sentence run concurrent to any sentence imposed in Case No. 15-CR-115 also pending in this district." Id. at ¶22.

### 3. Consolidated Change-of-Plea Hearing and Report and Recommendation

The same day that the parties signed and filed the agreements—December 7, 2016—Judge Jones conducted a change-of-plea hearing for Case Nos. 15-cr-115 and 16-cr-100. Case No. 16-cr-100, Dkt. No. 31. Both parties orally consented to Judge Jones taking the pleas. Id. at 1. After the court put the petitioner under oath, it questioned him, found him competent to enter a

5

plea and discussed the plea agreements with the parties. Id. Judge Jones
stated that he would recommend that Judge Stadtmueller and this court
accept the guilty pleas. Id. at 2. The same day, Judge Jones made that
recommendation to Judge Stadtmueller and to this court. Dkt. No. 32; see also
Dyer, Case No. 15-cr-115, Dkt. No. 202. Judge Jones noted that at the plea
hearing, he had "explained that it would be for the United States District Judge
alone, not me, to enter the plea and that my role was to conduct the plea
colloquy and then to prepare a report and recommendation for ultimate
disposition by Judge Pepper." Id. at 1.

In his report, Judge Jones described the change-of-plea hearing,
including (1) putting the petitioner under oath, (2) questioning the petitioner
regarding his competency, (3) discussing the rights that the petitioner would
waive by entering his plea, (4) discussing "the maximum penalties associated
with the charged offenses," and (5) discussing "the authority of the sentencing
judge to disregard any recommendations in the plea agreement and to give [the
petitioner] a maximum sentence." Id. at 1-2. The report indicated that Judge
Jones "determined that [the petitioner] was of above-average intelligence, . . .
fully capable of entering an informed, intelligent, and voluntary plea." Id. at 2.
He "further determined that [the petitioner's] guilty plea was in fact knowing
and voluntary and was not induced by threats or by promises not contained in
the Plea Agreement." Id. Judge Jones found "an independent factual basis
containing each of the essential elements of the offenses charged." Id. And,
"[the petitioner] advised that he was pleading guilty to the charged offenses
because he was, in fact, guilty and that the United States could prove beyond a
reasonable doubt each and every element of the charged offenses because each
and every element was true as to him." Id. Judge Jones concluded, "in

6

responding to my questions, [the petitioner] was candid, lucid, respectful, and non-evasive, fully accepting responsibility for and acknowledging the unlawfulness of his conduct." Id.

On December 12, 2016, Judge Stadtmueller considered Judge Jones's recommendation and adopted it. Case No. 15-cr-115, Dkt. No. 205 at 2. On December 20, 2016, this court adopted Judge Jones's recommendation. Case No. 16-cr-100, Dkt. No. 36 at 2. The court accepted the petitioner's guilty plea, finding that he made it knowingly, voluntarily and with full awareness of its consequences. Id.

      4.   *Sentencing in 16-cr-100*

On March 23, 2017, the petitioner filed a motion to withdraw his guilty plea—more than three months after the parties signed and filed the agreement, Judge Jones had conducted the change-of-plea hearing and issued his report and recommendation and this court had adopted the recommendation. Dkt. No. 43. The envelope containing the motion was postmarked March 21, 2017. Id. at 7.

The court conducted the sentencing hearing on March 23, 2017. See Dkt. No. 59. At the hearing, the petitioner objected to the entire presentence investigation report. Id. at 5. He stated that he had mailed from the Milwaukee County Jail a *pro se* motion to withdraw his guilty plea and he asked whether the court had received it. Id. at 5-6. When the court responded that it had not, the petitioner stated that "[i]t was sent from Milwaukee County Jail, handwritten," and that he "previously submitted a motion to dismiss that was voluminous." Id. at 6. He argued that all the indictments against him were "patently false." Id. The court explained that when the petitioner entered his

guilty plea, the guilty plea had "mooted, from a legal standpoint, the motion to dismiss." Id. at 7.

The court then turned to the petitioner's motion to withdraw his plea:

THE COURT: And what's the basis for seeking to withdraw your guilty plea, Mr. Dyer?

[THE PETITIONER]: That I'm innocent. And the reason that I pled guilty is because in Judge Stadtmueller's trial he made inappropriate comments in front of the jury that prejudiced me. I have documented the government's false statements—knowing false statements to the trial jury. And I've identified in three motions . . . probably 2,000 pages in total, numerous witnesses committing perjury. And I asked Judge Stadtmueller to file charges of perjury against these people and to discipline the U.S. attorneys, and he denied all of my motions . . .

Id. at 8. The court followed up with the petitioner regarding the length and basis for the motion:

THE COURT: . . . You're indicating to me that on March 7 you filed something that's comprised of over 2,000 pages?

[THE PETITIONER]: I believe it approaches 2,000. It's well over a thousand pages. Those were in Judge Stadtmueller's court, but I believe that those things are relevant because that's the reason I participated in the global plea agreement. I couldn't continue being prejudiced the way that I was in Judge Stadtmueller's court.

Id. at 8-9.

Noting the inconsistency between the petitioner's plea colloquies and admissions of guilt in front of Judge Jones and his current claim of innocence, the court asked the petitioner whether he had lied to Judge Jones. Id. at 9. The petitioner replied that he "didn't see it that way," but that he understood that he could not have been correct in both instances. Id. After the court asked the petitioner why he would plead guilty to a crime of which he was innocent, instead of pursuing an appeal, the petitioner stated that he "suffer[ed] from bipolar disorder," and "[p]erhaps [his] judgment was off." Id. at 9-10.

8

The petitioner agreed that (1) he had entered into a "global plea agreement that would encompass resolving this case and Judge Stadtmueller's case" id. at 13; (2) he had read and signed that agreement on December 7, 2016, id. at 13-14; (3) at the change-of-plea hearing, Judge Jones had asked him a series of questions regarding his constitutional and trial rights, id. at 15-16; (4) at the hearing, he was not on drugs, under the influence of alcohol or under any influence that impaired his ability to understand the English language, id. at 16; (5) nothing about his physical state at the hearing clouded his judgment or prevented him from understanding the court's questions or his own answers; id. at 17; and (6) no one coerced his plea with threats, id. at 17. He told the court, however, that he "felt as if [he] was forced to do this." Id. at 16.

The court enquired further into this assertion:

THE COURT: So what I understand you to be saying—and correct me if I'm wrong—what I understand you to be saying is that because of how the trial was going in front of Judge Stadtmueller you concluded that it was better for you, that you would suffer less damage, if you will, if you were to enter into a plea than to continue with that trial.

[THE PEITIONER]: I believe that I thought if I can address these things on paper as opposed to, as I said, being ambushed, people saying things that are not true, people saying things that are completely contrary to their earlier interviews, I would fare better.

THE COURT: And what led you to believe that by pleading guilty you would address these things on paper?

[THE PETITIONER]: Poor judgment.

Id. at 17-18. The court asked the petitioner to summarize what he'd told the court in the motion that he'd mailed, but which the court had not received. He responded:

I believe the—my position is that again I was forced to plead guilty in both cases because of what was going on in Judge Stadtmueller's

9

case; that I am innocent of the charges in this case. And basically that's it.

And I believe I asked you to review my motion to dismiss again and perhaps my motion to withdraw my guilty plea on the [f]arm case. That's the crux of my motion.

Id. at 19.

The court orally denied the motion, finding no legal basis for a plea withdrawal. Id. at 20, 22. The court explained that it had adopted Judge Jones's recommendation to accept the plea "because there was absolutely nothing in it that led [the court] to believe in any way, shape or form that [the petitioner] didn't understand what [he] was doing." Id. at 20-21. It found that "[the petitioner] [had] been fully advised twice of the consequences of pleading guilty," that he told a federal judge under oath that he was accepting the guilty plea and that decision to plead guilty instead of continuing the trial "certainly was a valid decision to make." Id. at 21. The court then proceeded to sentencing.

During its review of the applicable sentencing guidelines, the court addressed the fact that the government had agreed in the plea agreement to recommend that the court reduce the petitioner's offense level for acceptance of responsibility. Id. at 28. It noted the government's position that the court should grant the petitioner a three-level reduction because it had promised to do so in the plea agreement and because the petitioner had saved the government the time and expense of going to trial. Id. At that point, the court turned to the petitioner:

THE COURT: You understand I assume [Petitioner] that I am now in an unusual situation which is that you've informed me several times today that you don't accept responsibility for any of this. Is that correct?

10

[THE PETITIONER]: I'm just trying to manage this situation. I understand your position.

THE COURT: I'm asking you whether you are, in fact, telling me that you don't accept responsibility for what happened, for the charges that are in the indictment in this case, Case No. 100.

[THE PETITIONER]: How do you want me to answer that? I understand you're in that position. I'm accepting responsibility.

THE COURT: How?

[THE PETITIONER]: Going along with the plea agreement.

Id. at 29.

The court withheld ruling on whether to grant the petitioner a reduction for acceptance of responsibility until the end of the hearing. Id. at 35. During its sentencing argument, the government asked the court to give the petitioner the three-level reduction. Id. at 38. The prosecutor argued that if the court accepted that recommendation, the defendant would face an offense level of 26 in criminal history category IV with a resulting advisory sentencing range of 92 to 115 months. Id. at 39. The government recommended that the court impose a sentence in the middle of the guideline range. Id.

In his sentencing argument, the petitioner stated that he did not want to jeopardize his "potential acceptance of responsibility," but that he had understood from the presentence report that he was facing seventy to eighty-seven months. Id. at 41. He briefly told the court that the case arose because the victims filed a lawsuit against his father for false purposes and that he had been trying to get an out-of-court settlement of the issue. Id. at 41-42. He stated that he wanted to accept responsibility and "get this behind" him, reminding the court that he was fifty-three years old and had ten children who depended on him. Id. at 42.

11

The court declined to give the petitioner credit for acceptance of responsibility, emphasizing his continued effort to withdraw his guilty plea and incredible explanations for the relevant events. Id. at 47-50. The court concluded that the offense level was 29 in criminal history category IV, resulting in an advisory sentencing range of 121 to 151 months. Id. at 51. After considering the 18 U.S.C. §3553(a) sentencing factors, the court imposed a sentence of 110 months of incarceration with credit for time served, followed by three years of supervised release, to be served concurrently with the sentence imposed in Case No. 15-cr-115. Id. at 59. The court then asked the petitioner whether there was anything he had questions about or anything he thought the court had not mentioned; the petitioner replied that he did not. Id. at 63.

5. *Consolidated Appeal*

On March 20, 2017, the petitioner filed a notice of appeal in Case No. 15-cr-115. Case No. 15-cr-115, Dkt. No. 237. On April 5, 2017, the petitioner filed a notice of appeal in 16-cr-100. Case No. 16-cr-100, Dkt. 50. The Seventh Circuit consolidated the appeals. See Dyer, Case No. 16-cr-100, Dkt. No. 68 at 1. As this court explained in its March 17, 2020 order screening the petitioner's amended §2255 motion,

> The docket for the petitioner's appeal reflects that the Seventh Circuit appointed appellate counsel for him. United States v. Dyer, Court of Appeals Case #17-1776, at Dkt. No. 8 (7th Cir. May 11, 2017). The petitioner argued on appeal that Judge Jones did not conduct a proper plea colloquy. Id. at Dkt. No 25 (7th Cir. Nov. 15, 2017). Specifically, he argued (1) that Judge Jones failed to inquire into the petitioner's mental state; (2) that the colloquy was not sufficient in light of the complexity of the three cases; (3) that the colloquy did not address Judge Stadtmueller's allegedly improper remarks at trial; (4) that the colloquy did not advise the petitioner that he was waiving his right to contest the district court's pretrial and trial rulings; and (5) that the cumulative errors should have mandated allowing the petitioner to withdraw his plea. Id.

Dyer v. United States, Case No. 19-cv-752 (E.D. Wis.), Dkt. No. 26 at 8. The Seventh Circuit rejected the petitioner's arguments and affirmed the district courts. Dyer, Case No. 16-cr-100, Dkt. No. 68 at 2, 9.

In its discussion of the standard of review, the Seventh Circuit recounted how the petitioner had asked it to "review for abuse of discretion, but the government respond[ed] that plain-error review [was] appropriate because [the petitioner] did not alert the district judges to any specific deficiency in the Rule 11 colloquy." Id. at 5-6 (citation omitted). The court attached a footnote to this sentence, which provided that

> [a]fter filing its response brief, the government submitted a Circuit Rule 28(j) letter asserting that [the petitioner] waived his claims by not objecting to the magistrate's recommendation before the district judges accepted it. Setting aside any question whether [the petitioner] had adequate time to object to the recommendation or would need to do so in order to "withdraw" a plea that a district court had not yet formally accepted, the government waived its waiver argument by saving it for a Rule 28(j) letter.

Id. at 6, n.1 (citation omitted).

The Seventh Circuit agreed "that [the petitioner] was 'fully in the moment and understanding what's going on.'" Id. at 7. The court found that Rule 11 permits plea colloquies that elicit simple yes or no responses. Id. at 8. The court rejected the petitioner's argument that "his decision to plead guilty required a more thorough colloquy," remarking that the petitioner's "sudden change of heart is no anomaly" and that "there was no reason for the district court or the magistrate to find that phenomenon unusual." Id. at 8-9.

B.    Motions to Vacate Under §2255

On May 21, 2019, the petitioner filed a motion to vacate, set aside or correct the sentence in Case No. 16-cr-100. Case No. 19-cv-752, Dkt. No. 1. As this court later recounted in its order screening the amended §2255 motion,

13

the motion alleged seven grounds for relief: (1) that [the petitioner's] appellate counsel "was grossly incompetent" for failing to raise two issues on direct appeal—Judge's Jones's failure to appoint counsel and his failure to conduct a <u>Faretta</u> hearing, dkt. no. 1 at 6; (2) that the government committed prosecutorial misconduct by failing to produce favorable discovery material, namely phone recordings between the petitioner and victim Cindy Bakley, <u>id.</u> at 7; (3) that the court failed to follow 28 U.S.C. §636(b)(1)(C) because it adopted the magistrate judge's recommendation before the fourteen-day objection deadline had passed, <u>id.</u> at 9; (4) that the indictment was defective because it did not allege that the petitioner knowingly and willfully defrauded the victims, <u>id.</u>; (5) that the court violated the petitioner's constitutional rights by not ordering a mental evaluation before allowing him to proceed *pro se*—and within this claim, the petitioner alleged that his appellate counsel failed to raise this issue on direct appeal, <u>id.</u> at 10; (6) that the government vindictively/ selectively prosecuted him, <u>id.</u>; and (7) that standby counsel— Martin Pruhs—negotiated and signed the plea agreement even though Pruhs was not retained or appointed to represent the petitioner in this case. <u>Id.</u> at 12.

Dkt. No. 26 at 9-10.

On November 18, 2019, the petitioner filed an amended motion to vacate, set aside or correct the sentence in Case No. 16-cr-100. Dkt. No. 19. The motion asserted a single ground for relief: that the petitioner's appellate attorney performed ineffectively in failing to argue that the district court prematurely adopted the recommendation. <u>Id.</u> at 4. Stating that "[t]he magistrate judge submitted a Report and Recommendation [] on December 7, 2016," and that the district court "adopted the R&R on December 20, 2016," the petitioner argued that he "was deprived both procedural due process afforded by 28 U.S.C. §636(b)(1) and the structural guarantees of Article III of the United States Constitution to de novo review." Dkt. No. 19 at 3.

The petitioner argued in his memorandum in support of the amended petition that "it [was] undeniable and easy to see that [he] desired to fully object and rescind his offer to plead guilty, as he was not comfortable with

14

allowing them to go forward by realizing more and more his ability to prove his innocence by Emails and telephone recordings between the victims and himself." Dkt. No. 20 at 3. According to the petitioner, he had an "absolute right to rescind his offer to plead, and exercise his right to trial, before [the plea] was formally accepted by the district court." Id. While conceding that he "may have consented" to Judge Jones conducting a plea colloquy, the petitioner asserted that he did not consent to Judge Jones "formally accepting any offer to plead by Petitioner." Id. He contended "the very next day" after the plea colloquy—December 8, 2016—he "expressed his intentions of wanting to rescind his plea offers—before they were formally accepted by the district court—by notifying both 'stand by' counsel of his wishes." Id.

The petitioner also argued that he was not sure what he needed to do to withdraw his pleas and that, despite Judge Jones telling them to do so, neither standby counsel gave him any direction. Id. at 4. He argued that standby counsel could have advised him to object despite the district courts having adopted Judge Jones's recommendations to accept the pleas. Id.

On November 18, 2019, the petitioner filed a motion to vacate, set aside or correct the sentence imposed in Case No. 15-cr-115. Dyer v. United States, Case No. 19-cv-1694 (E.D. Wis.), Dkt. No. 1. That motion asserted the same single ground for relief as the amended motion in the instant case—that the petitioner's appellate attorney performed ineffectively in failing to argue that the district court prematurely adopted the recommendation. Id. at 4.

On March 17, 2020, this court screened the amended motion to vacate in the instant case under Rule 4 of the Rules Governing Section 2255 Proceedings. Dyer, Case No. 19-cv-752, Dkt. No. 26. Considering only whether the petitioner raised claims cognizable in a §2255 proceeding, whether he had

exhausted those claims and whether he had filed the motion within the limitations period, the court allowed the petitioner to proceed and ordered the respondent to respond. Id. at 11, 20.

On April 28, 2020, Judge Stadtmueller denied the petitioner's motion to vacate the conviction in Case No. 15-cr-115. Case No. 19-cv-1694, Dkt. No. 6. Judge Stadtmueller noted that he had adopted Judge Jones's report and recommendation on December 12, 2016—five days after Judge Jones wrote it. Id. at 3. He recounted that on the same day that he adopted the report and recommendation, the petitioner "filed another motion to travel to Palm Desert, California, which was granted at a hearing before Magistrate Judge Nancy Joseph on December 23, 2016." Id. Judge Stadtmueller stressed that in the two weeks following Judge Jones's colloquy, the petitioner never expressed any concern with the timing of the court's adoption of the report and recommendation. Id.

Agreeing that §636(b)(1) allows parties fourteen days to serve written objections to a magistrate's report and recommendation, Judge Stadtmueller emphasized a district court's "considerable discretion to adopt, reject, or modify any portion of the magistrate's R&R, whether it has been objected to or not." Id. at 8 (citing Thomas v. Arn, 474 U.S. 140, 154 (1985)). And he found that while a district court should not adopt a magistrate judge's report and recommendations before the consideration of timely filed objections, a premature adoption is harmless unless a party can demonstrate prejudice. Id. (quoting 13 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure §3505, (3d ed.)). Judge Stadtmueller concluded that "the central questions to this habeas petition are whether [the petitioner] was prejudiced— on the first level, by the Court's failure to give a full 14 days to object to the

16

R&R; on the second level, by [the petitioner's] appellate counsel's failure to raise this issue before the Seventh Circuit." Id. He explained that prejudice required a credible allegation that the petitioner intended to object to the report and recommendation, and that to make such a showing through an ineffective assistance of counsel claim required a credible allegation that counsel's failure to raise the argument changed the result of the proceedings. Id.

Judge Stadtmueller concluded that "the docket betray[ed] any possibility that [the petitioner] intended to object to the magistrate's R&R." Id. at 9. Characterizing the petitioner as "a prolific litigant who files *pro se* motions when represented, who quibbles with the hardest of evidence, and who contorts even the most basic of facts into the foundation of another fantasy in which he is both a victim and a champion," Judge Stadtmueller found that "in the month that followed the Court's premature adoption of the R&R, one might have expected [the petitioner] to file his objections anyway—or perhaps file a complaint that he was not afforded enough time to file objections, or perhaps raise this issue in the hundreds of pages that he later filed in an attempt to withdraw his plea." Id. Judge Stadtmueller observed that "[i]nstead, in the weeks following his plea colloquy, [the petitioner] secured a trip to Palm Desert, California." Id. He remarked that "[i]n the early months of 2017, the docket was quiet; [the petitioner] did not submit a single motion or letter to the Court." Id. Rather, Judge Stadtmueller explained, "[i]t was not until a week *after* disclosure of the pre-sentence report [] that [the petitioner] revealed any qualms with his plea." Id. To Judge Stadtmueller, "it appear[ed] that the first time [the petitioner] raised the issue of the premature R&R adoption before the Court was *after* the Seventh Circuit noted the procedural hiccup in a footnote." Id.

Judge Stadtmueller concluded that "there [was] absolutely no credible suggestion" that the petitioner had intended to timely object to Judge Jones's report and recommendation. Id. He recounted a decision from the Fifth Circuit finding that a petitioner waived an argument that a district court erred in a premature adoption of a magistrate judge's report and recommendation when "the adversely affected party had 'ample opportunity before the court's judgment became final to bring this error to the court's attention,' but failed to do so." Id. at 10 (citing McGill v. Goff, 17 F.3d 729, 732 (5th Cir. 1994), overruled on other grounds by Kansa Reinsurance Co., Ltd. V. Cong. Mortg. Corp. of Tex., 20 F.3d 1362, 1373 (5th Cir. 1994)). Judge Stadtmueller stressed that in Case No. 15-cr-115, the petitioner had had almost four months before sentencing to object to the adoption of the report, or bring it the court's attention, and he did not. Id. He concluded that "[u]nder McGill, [the petitioner] waived the right to use this as a basis for his appeal—to say nothing of his right to stake his habeas claim for ineffective assistance of counsel on it." Id.

Judge Stadtmueller noted that "the Eighth Circuit has observed that simply because a district court adopts an R&R prematurely does not mean that the district court failed to conduct its own de novo review." Id. (citing Sumlin v. United States, 46 F.3d 48, 49 (8th Cir. 1995)). He explained that he accepted the petitioner's plea "with full knowledge of the terms of the plea agreement, the background of the case, and the thorough manner in which Magistrate Judge Jones conducted his plea colloquies." Id. Judge Stadtmueller noted that "the Court had occasion to address [the petitioner] in open court in the days immediately preceding the plea colloquy, and was familiar with his personality, his intelligence, and his ability to weigh the pros and cons of his plea agreement." Id. Conceding that his decision to adopt Judge Jones's report and

18

recommendation was "procedurally early," Judge Stadtmueller clarified that it "was nevertheless based on a reasoned assessment of [the petitioner] and the agreement," and was "not grounds for a new trial." Id.

Judge Stadtmueller stated that the change-of-plea hearing transcript showed that "any plausible objections that might have been raised would have been meritless." Id. Under his review of the change-of-plea hearing, he found the petitioner's §2255 motion meritless. Id. at 11-12. He concluded that "[n]ot only is there no sign that [the petitioner] intended to object to his plea colloquy R&R, but the record demonstrate[d] that any objections to the colloquy would have been unmeritorious had they been raised for consideration." Id. Judge Stadtmueller ruled that the petitioner's appellate counsel did not prejudice the petitioner by failing to raise the premature adoption issue because doing so would not have changed the result of the proceedings. Id. Judge Stadtmueller deemed the case "devoid of grounds for habeas relief on the basis of ineffective assistance of counsel." Id. He concluded that "[t]o proceed—even briefly—as if this were a meritorious claim would be nothing short of an insult to the judiciary, and an utter waste of time." Id.

On May 7, 2020, the petitioner appealed Judge Stadtmueller's decision dismissing his §2255 motion to the Seventh Circuit. Dyer v. USA, Seventh Circuit Court of Appeals Case No. 20-1767, Dkt. No. 1 (available at https://ecf.ca7.uscourts.gov). On May 13, 2020, the Seventh Circuit found the petitioner's appeal successive to his appeal of his conviction in Case No. 15-cr-115, consolidated the appeals for disposition and ordered the petitioner to submit a brief "addressing only whether this court should issue a certificate of appealability for No. 20-1767." Dkt. No. 2.

C.    Respondent's Motion to Dismiss (Dkt. No. 30)

19

On May 15, 2020, the respondent filed a motion to dismiss the instant petition. Dyer, Case No. 19-cv-752, Dkt. No. 30. The respondent asserted that while the petitioner's motion rested on undisputed factual grounds, it advanced frivolous arguments that failed to show a basis for relief. Id. at 1. Conceding that this court had adopted Judge Jones's report and recommendation in less than fourteen days, the respondent pointed out that Judge Stadtmueller did so even sooner. Dkt. No. 31 at 3.

The respondent explained that in Case No. 19-cv-1694, Judge Stadtmueller dismissed the identical §2255 motion. Id. The respondent "adopt[ed] Judge Stadtmueller's reasoning *in toto* and respectfully ask[ed] that this branch of the Court do likewise." Id. The respondent asserted that "[the petitioner's] motion here, like the one he filed before Judge Stadtmueller, is 'devoid of grounds for habeas relief on the basis of ineffective assistance of counsel.'" Id. (citing Case No. 19-cv-1694, Dkt. No. 6). "[T]he respondent agree[d] that '[t]o proceed—even briefly—as if this were a meritorious claim would be nothing short of an insult to the judiciary, and an utter waste of time.'" Id. The respondent argued that an evidentiary hearing was unnecessary because the facts were undisputed and the §2255 motion was frivolous. Id. at 3-4.

The petitioner asked the court to deny the motion to dismiss, grant an evidentiary hearing and grant "the relief requested." Dkt. No. 35 at 1, 12. Noting the respondent's admission that this court adopted the report and recommendation before fourteen days elapsed, the petitioner argued that "he should be awarded an evidentiary hearing and the relief requested, as he was entitled *within* said fourteen day time period to *withdraw his offer* to plead guilty." Id. at 1-2 (emphasis in original). According to the petitioner, the

respondent's reliance on Judge Stadtmueller's decision "is an insufficient defense to the matter before this Court as that judgment and decision are currently being appealed to the" Seventh Circuit. Id. at 2. Noting that Judge Stadtmueller's decision has the "potential risk of being overturned," the petitioner contended that the respondent "d[id] not provide what authority authorizes them to adopt a judgment that has not yet reached finality." Id. The petitioner argued that under §636(b)(1), a timely objection to a portion of a report and recommendation requires the district court to review those portions of the report de novo. Id. at 3.

The petitioner construed the respondent's motion to dismiss as arguing that his two criminal cases—as opposed to his §2255 motions to vacate the resulting convictions in those cases—were identical. Id. The petitioner characterized that argument as erroneous. Id. He asserted that an attached "time sheet" reflected that he informed his attorneys "of his intent to raise objections and withdraw his guilty plea on December 8, 2016, the day following the December 7, 2016 change-of-plea hearing." Id. The petitioner stated that on October 22, 2017, he sent an email to his attorney "which informed him of the fact that [he] was not afforded any time to raise objections in the 115Farmland case and that the 100Insurance case court adopted the R & R prior to the expiration of the fourteen days." Id. at 3-4. He said that he sent his attorney another email in January of 2019 that said: "Please don't forget to mention the premature acceptance of the report and recommendation." Id. at 4.

The petitioner argued that "the record reflects overwhelmingly that, [he] intended to object to the magistrates R & R on the change-of-plea hearing and intended on withdrawing his offer to plead guilty." Id. As evidence, the petitioner cited (1) time sheets of his attorneys reflecting that he contacted

21

them the day after the change-of-plea hearing to "inform[] them of his intent to raise objections and his intent to withdraw his offer to plead guilty," (2) the fact that he did not inform the court "that he was not going to be raising objections as required in the R & R," (3) an email he sent to his attorney regarding his preparation of objections and wish to withdraw his plea, and (4) his own sworn affidavit. Id. at 4-5.

The petitioner argued that McGill is a Fifth Circuit case, and thus, does not control this court's decision. Id. at 5. He asserted that the Fifth Circuit had decided McGill "prior to Congress increasing the time limit for raising objections from ten days to fourteen days." Id. The petitioner alleged that "the entire reason the 115Farmland and 100Insurance case courts adopted the magistrate's R & Rs on the change-of-plea colloquies was to prevent defendant from withdrawing his offers to plead guilty in what appears to be a collusive effort." Id. at 6. He disagreed with Judge Stadtmueller's and the government's argument that he "was represented by competent standby counsel," id., and argued that the courts failed to reconsider his waivers of counsel throughout the proceedings in his criminal cases, id. at 7-9.

D.    Seventh Circuit Mandate in 20-1767

On July 29, 2020, the Seventh Circuit denied a certificate of appealability in 20-1767—the petitioner's appeal of Judge Stadtmueller's decision denying his §2255 motion to vacate his conviction in 15-cr-115. Dyer, Seventh Circuit Court of Appeals Case No. 20-1767, Dkt. No. 9 (available at https://ecf.ca7.uscourts.gov). The court found "no substantial showing of the denial of a constitutional right," and concluded that 28 U.S.C. §2253(c)(2) required it to deny petitioner's request for a certificate of appealability. Id. at 2.

## II.    Motions Filed After Briefing

The court received the petitioner's opposition brief on June 26, 2020, dkt. no. 33, and a "corrected" opposition brief on July 2, 2020, dkt. no. 35. Then, in a pattern familiar to the court, he proceeded to file various letters, affidavits and motions. He filed a letter asking this court to tell him how many times it had "failed to provide the fourteen days during your tenure as a U.S. District Court Judge." Dkt. Nos. 38, 39. (The court received this letter twice— once on January 14, 2021 and again on February 5, 2021.) He wrote the court a letter, urging it to rule on this petition because he did not want the government to be able to use his conviction in Case No. 16-cr-100 against him in a suit the government had filed seeking a protective order. Dkt. No. 37. He filed an affidavit asserting many of the facts he argued in his petition. Dkt. No. 40.

He also filed several motions. On February 19, 2021, the court received from the petitioner a motion to appoint counsel, even though by that time the petition had been fully briefed. Dkt. No. 41. On March 1, 2021, the court received a motion to expedite ruling on this petition, arguing that his conviction in Case No. 16-cr-100 was flawed and that the court should vacate the conviction. Dkt. No. 42. On March 29, 2021, the court received another motion to expedite, reiterating his arguments that his conviction was flawed and should be vacated. Dkt. No. 43. On May 7, 2021, the court received a motion from the petitioner demanding the CJA vouchers filed by his standby counsel, so that he could "establish, once and for all, that [the standby attorneys] were not appointed in the 16-CR-100-PP Bakley case, did not file an appearance, did not submit for payment, any CJA 20 Vouchers, were not compensated to represent Defendant, and consequently, did not represent Defendant in the 16-CR-100-PP Bakley case." Dkt. No. 45. On May 17, 2021, the court received a

23

motion for leave to file newly-discovered evidence; the petitioner wanted leave to file evidence that before this court adopted Judge Jones's report and recommendation, no one had ordered transcripts of the change-of-plea hearing before Judge Jones (and thus, he reasons, this court must have been lying when it stated, in adopting the report and recommendation, that it had reviewed the plea hearing and Judge Jones's findings). Dkt. No. 46. On June 16, 2021, the court received a motion for grand jury transcripts, apparently in an attempt to demonstrate that the government did not present evidence to the grand jury that he acted knowingly and intentionally. Dkt. No. 47. Finally, on September 3, 2021, the court received from the petitioner a motion to supplement his petition; he sought to supplement the petition with information he received from the Office of Lawyer Regulation after he filed complaints against his standby counsel. Dkt. No. 48.

The court will deny all of these motions.

A.    Motion to Appoint Counsel (Dkt. No. 41)

The petitioner asserted that his ability to represent himself was "inhibited by his un-medicated manic depressive illness," which he said could result in bad judgment and decision-making. Dkt. No. 41 at 5. He also said that he lacked legal expertise, that his incarceration could cause him to present underdeveloped arguments and cause meritorious claims to fail. Id. The petitioner told the court that he had no access to typewriters word processing or the legal library at the prison where he then was incarcerated (Yankton, South Dakota) because of COVID-19-related lockdowns. Id. at 6 n.1 He stated that Attorney Robert Penegor (who, until recently, had represented the petitioner in another case pending before this court) had expressed a

willingness to accept an appointment to represent the petitioner "with the condition that he be given a budget for a researcher." Id.

> A motion under § 2255 to vacate, set aside, or correct a sentence is not part of the original criminal proceeding; it is an independent civil suit. *Heflin v. United States*, 358 U.S. 415, 418 n.7 . . . (1959); *United States v. Balistrieri*, 606 F.2d 216, 220 (7th Cir. 1979), *cert. denied*, 446 U.S. 917 . . . (1980); *United States v. Caufield*, 207 F.2d 278, 280 (7th Cir. 1953). Because it is civil in nature, a petitioner under § 2255 does not have a constitutional right to counsel. *Ellis v. United States*, 313 F.2d 848, 850 (7th Cir. 1963); *McCartney v. United States*, 311 F.2d 475, 476 (7th Cir.), *cert. denied*, 374 U.S. 848 . . . (1963); *see also Caruth v. Pinkney*, 683 F.2d 1044, 1048 (7th Cir. 1872) ("There is little doubt that there is no constitutional right to appointed counsel in a civil case."), *cert. denied*, 459 U.S. 1214 . . . (1983).

Rauter v. United States, 871 F.2d 693, 695 (7th Cir. 1989).

The petitioner acknowledges this fact, but he points out that the Criminal Justice Act, 18 U.S.C. §3006A, gives courts the discretion to appoint counsel for *habeas* petitioners if the court concludes that the interests of justice require it. Dkt. No. 41 at 2. He points to cases where courts (other than the Seventh Circuit) have appointed counsel if a petitioner has a colorable claim but no capacity to present it; if the court finds the petitioner's claims are not totally spurious; if the issues were legally complex or intricate and the facts underdeveloped; or if the petitioner made a claim of mental incompetence. Id. at 2-3.

None of those situations are present here. The petitioner does not have a colorable claim, for the reasons the court will explain below. His claim is spurious, for the reasons the court will explain below. His claim is not complex and the facts are not underdeveloped (in fact, the government concedes the basic fact at issue, as will this court). And while the petitioner has referred to

his bi-polar disorder more than once, both in his criminal case and in this one, he has not argued that he is incompetent.

Nor is the court willing to exercise its discretion to appoint counsel to represent the petitioner, for several reasons. First, the "heavy lifting" of this petition is done. The petition is not only fully briefed, but the petitioner has filed multiple documents since the briefing was completed, many of which contain further arguments in support of his claim. He has filed many, many pages of documents and the court has been able to understand every one of them. There is nothing left for an attorney to do for the petitioner. Second, the court is aware from presiding over Case No. 16-cr-100, this case and 19-cv-1319 that the petitioner is not able to keep himself from filing pleadings and other documents even when he is represented by counsel. He cannot bring himself to rely on the lawyers this court and others have appointed to represent him, so it is not clear why he asks the court to appoint yet another lawyer for him.[1] Third, Attorney Penegor (whom the plaintiff indicated was willing to be appointed) and the petitioner have had a parting of the ways. Attorney Penegor no longer represents the defendant in Case No. 19-cv-1319 and that is, in part, because the petitioner complained about the quality of Attorney Penegor's representation.

Fourth, and related to the previous point, the petitioner has a history of difficulty establishing a relationship of trust with lawyers. In Case Nos. 15-cr-115 and 15-cr-137, Attorney Troy Owens appeared for the petitioner at his July

---

[1] The petitioner has stated in the past that he is a certified paralegal, completing his training online but never practicing as a paralegal, and that he has done extensive reading of criminal law textbooks. <u>See, e.g.</u>, Case No. 15-cr-137, Dkt. No. 23 at 1.

16, 2015 arraignments. Case No. 15-cr-115, Dkt. No. 23 at 1; Case No. 15-cr-137, Dkt. No. 5 at 1. By mid-August—just a month later—Attorney Owens had moved to withdraw in both cases, citing a "material, irrevocable, irreparable and permanent break down" in his relationship with the petitioner. Case No. 15-cr-115 at Dkt. No. 35; Case No. 15-cr-137 at Dkt. No. 13. The petitioner eventually asked the courts in both cases to allow him to represent himself. Case No. 15-cr-115 at Dkt. No. 46; Case No. 15-cr-137 at Dkt. No. 21. The courts allowed the petitioner to represent himself, but appointed standby counsel, Attorney Robert LeBell. Case No. 15-cr-115 at Dkt. No. 53; Case No. 15-cr-137 at Dkt. No. 26. At a hearing on December 17, 2015, Judge Jones appointed Attorney LeBell to represent the petitioner in full, not just as standby counsel. Case No. 15-cr-115 at Dkt. No. 63; Case No. 15-cr-137 at Dkt. No. 34. By May 18, 2016—five months later—Attorney LeBell had moved to withdraw, asserting that the petitioner had asked him to withdraw and that "lines of effective communication no longer exist." Case No. 15-cr-115 at Dkt. No. 86; Case No. 15-cr-137 at Dkt. No. 49, 49-1. The petitioner again sought to represent himself. Case No. 15-cr-115 at Dkt. No. 88; Case No. 15-cr-137 at Dkt. No. 51. The court appointed Attorney Patrick Cafferty as standby counsel. Case No. 15-cr-115 at Dkt. No. 91; Case No. 15-cr-157 at Dkt. No. 54.

Meanwhile, in Case No. 16-cr-100, the defendant advised Judge Jones at his July 13, 2016 arraignment hearing that he was representing himself in his other cases and wished to represent himself in that one. Case No. 16-cr-100 at Dkt. No. 6, p. 1. A day later, Attorney Cafferty moved to withdraw as standby counsel in the other two cases, indicating that the prior day, the petitioner had contacted him and asked him to withdraw. Case No. 15-cr-115 at Dkt. No. 108; Case No. 15-cr-157 at Dkt. Nos. 59, 59-1.

27

On November 3, 2016, a month before Case No. 15-cr-115 was scheduled for trial, the government suggested to Judge Stadtmueller that he consider appointing standby counsel for the petitioner even if the petitioner did not want one. Case No. 15-cr-157 at Dkt. No. 156. Magistrate Judge Jones followed that suggestion, Case No. 15-cr-157 at November 14, 2016 text-only order, and on November 15, 2016, Attorneys Christopher Donovan and Martin Pruhs filed notices of appearance as standby counsel. Case No. 15-cr-157 at Dkt. Nos. 161, 163.[2] The petitioner since has made various allegations that Attorneys Donovan and Pruhs failed him; it appears that he has filed complaints against them.

Finally, the court appointed Attorney Penegor to represent the petitioner in Case No. 19-cv-1319, and as the court has indicated, the petitioner now faults Attorney Penegor's representation. The court has no reason to think that if it were to grant the petitioner's motion to appoint counsel in this case, the petitioner would able to get along with whoever that attorney might be any better than he was able to get along with Attorneys Owens, LeBell, Cafferty, Donovan, Pruhs or Penegor.

The court will deny the motion to appoint counsel.

B.      Motions to Expedite (Dkt. Nos. 42, 43)

On March 1 and March 29, 2021, the court received from the petitioner two motions to expedite. Dkt. Nos. 42, 43. Much of the motion at Dkt. No. 42 is

_____

[2] As the petitioner has pointed out more than once in several documents, Attorneys Donovan and Pruhs were not appointed as standby counsel in Case No. 16-cr-100, although Attorney Pruhs signed the "global" plea agreement that was filed in that case.

28

argument in support of the petitioner's view that his conviction in Case No. 16-cr-100 is invalid. He asked the court to expedite its ruling on this §2255 petition because, he said, it would be prejudicial in Case No. 19-cv-1319—the case in which the government seeks a protective order prohibiting the petitioner from suing individuals identified as victims in Case No. 16-cr-100—for the government to be able to make references to Case No. 16-cr-100 if that conviction is "flawed" and will be reversed. Dkt. No. 42. The motion at Dkt. No. 43 proceeds in a similar vein, laying out reasons that the petitioner believes his conviction in Case No. 16-cr-100 is flawed. Dkt. No. 43.

These motions ask the court to decide the petitioner's §2255 petition quickly because of another case pending against him. That is not a basis for the court to push the petitioner's motion to the front of a long line of other *habeas* petitioners. The petitioner is correct that his petition has been pending for over two and a half years. That is not a particularly long time given the number of documents the petitioner has filed, the number of cases in which he has been making those filings and the court's criminal and civil caseload. The court prioritized the petitioner's case as best it could in light of those other factors.

The court will deny the petitioner's motions to expedite. Dkt. Nos. 42, 43.

C.     Motion Requesting Copies of the CJA 20 Vouchers (Dkt. No. 45)

The petitioner claims that Chapter 5, §10 of the Guide to Judicial Policy says that "CJA 20 Vouchers are available pursuant to 18 U.S.C. § 3006A." Dkt. No. 45 at 1. He takes issue with the magistrate judge's December 7, 2016 report and recommendation that this court accept the defendant's guilty plea, in which Judge Jones stated that that the petitioner had waived his right to counsel but was proceeding with the assistance of standby counsel. Id. at 2.

The petitioner argues that Attorneys Donovan and Pruhs were not representing him in Case No. 16-cr-100 and that they told him as much. Id. at 2-3. He takes issue with this court's order in Case No. 19-cv-1319, Dkt. No. 12, in which it stated that the defendant had waived his right to counsel in Case No. 16-cr-100 and was represented in the case by Attorney Pruhs. Id. at 3. He asserts that even if Donovan and Pruhs had been acting as standby counsel in Case No. 16-cr-100, their representation would have been ineffective, because he claims they negotiated a plea agreement without him present and without his consent. Id. at 4. The petitioner concludes that he needs "the CJA 20 Vouchers" to show that Donovan and Pruhs were not appointed to represent him in Case No. 16-cr-100. Id.

The petitioner has raised a single issue in his §2255 petition—whether the lawyer who represented him in his appeal of his conviction in Case No. 16-cr-100 provided ineffective assistance of counsel by failing to argue that this court adopted Judge Jones's report and recommendation that it accept the petitioner's guilty plea without giving him the fourteen days to object provided for in 28 U.S.C. §636. Dkt. No. 19 at 4. Even if it is true that Judge Jones and this court erred in stating that Attorneys Donovan and Pruhs were available as standby counsel to the petitioner in Case No. 16-cr-100, that error would be irrelevant to the question of whether the petitioner's *appellate* counsel in the Seventh Circuit was ineffective in failing to raise the issue of this court's premature adoption of Judge Jones's report and recommendation. And because the petitioner did not raise this issue on appeal, he could not raise it in this §2255 petition unless he could show cause and prejudice. See Massaro v. United States, 538 U.S. 500, 504 (2003) ("the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the

30

petitioner shows cause and prejudice," citing <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982); <u>Bousley v. United States</u>, 523 U.S. 614, 621-22 (1998)).

Nor does the petitioner state what "CJA 20 Vouchers" he is seeking. He claims that Attorneys Donovan and Pruhs did no work in Case No. 16-cr-100 and that they admitted as much to him. If that is true, there would be no CJA vouchers for Attorneys Donovan and Pruhs in Case No. 16-cr-100 and thus there would be no vouchers for the court to give the petitioner. If he is asking for vouchers Donovan and Pruhs may have submitted in other cases so that he can prove the negative that they did not submit vouchers in Case No. 16-cr-100, the court would deny that request even if the issue were relevant to the petitioner's §2255 claim. Section 3006A(d)(4)(D) limits public disclosure of the amounts paid under a CJA voucher when necessary to protect the attorney-client privilege, the work product privilege of counsel or other interests of justice. Giving the petitioner access to vouchers Attorneys Donovan and Pruhs submitted for other clients would endanger those interests.

Finally, for whatever it is worth, the court concedes that there is no order on the docket in Case No. 16-cr-100 appointing Attorney Donovan or Attorney Pruhs as standby counsel in that case.

The court will deny the motion requesting copies of CJA 20 vouchers. Dkt. No. 45.

D.    <u>Motion Seeking Leave to File Recently Obtained Evidence</u>
      <u>(Dkt. No. 46)</u>

The petitioner seeks leave to supplement the record with an email from court reporter John Schindhelm (a member of the clerk's office of the Eastern District of Wisconsin), in which Mr. Schindhelm responded to Administrative Assistant Tracy at Agri Business Investors LP that the government ordered the change-of-plea transcript for Case Nos. 15-cr-115 and 16-cr-100 on June 1,

31

2007. Dkt. No. 46-1. The petitioner believes that this information is important because in its order adopting Judge Jones's report and recommendation that this court accept the petitioner's guilty plea in Case No. 16-cr-100, this court said, "Having reviewed the case, and in particular, the plea hearing and Judge Jones' findings, the court ADOPTS Judge Jones' report and recommendation." Dkt. No. 46 at 2-3. The petitioner asserts that the court could not possibly have reviewed the plea hearing or Judge Jones's finding at the time it adopted the report and recommendation because the government did not order the transcript of the change-of-plea hearing until months later. Id. at 3. He asserts that if the court had reviewed the transcript before adopting the report and recommendation, it would have seen that, contrary to what Judge Jones said in his report and recommendation, in Case No. 16-cr-100, the petitioner did not waive his Sixth Amendment right to counsel via a full colloquy of the kind described in Faretta v. California, 422 U.S. 806 (1975); he insists that he made that waiver in "a different case some eight months prior." Id. The petitioner argues that if the court had made a "thorough review of the record, including the docket," it would have learned that no attorney had been appointed to the petitioner in Case No. 16-cr-100, which, he says, "begs the question, how much time did attorneys Christopher Donovan and Martin Pruhs spend preparing for [his] defense in the 160-cr-100 Bakley case, and how much compensation did they receive?" Id. at 4. He warns the court that if it denies his §2255 petition, he will appeal and that "an appellate court would need to be satisfied that a district judge had exercised his/her non-delegable authority by considering the record of the Change-of-Plea colloquy, and not by merely reviewing the magistrates report and recommendation." Id. He insists that the

district court "must, at a minimum, read a transcript of the Change-of-Plea hearing." Id.

Again, the petitioner's request is irrelevant to the single issue he has raised in this §2255 motion—whether his appellate counsel was ineffective in failing to raise the premature adoption of the report and recommendation. And again, because he did not raise the issue on appeal, he could not raise it in this §2255 petition unless he could show cause and prejudice.

Even if the petitioner's argument—that this court did not review the transcript of the change-of-plea colloquy before adopting Judge Jones's report and recommendation—were relevant to the issue he has raised, the court would not grant the motion. The docket shows that the change-of-plea hearing took place on December 7, 2016. Dkt. No. 31. Judge Jones issued his report and recommendation the same day. Dkt. No. 32. This court signed the order adopting the report and recommendation on December 20, 2016. Dkt. No. 36. The transcript of the change-of-plea hearing is on the docket; it was not docketed until June 28, 2017—six months after the court adopted the report and recommendation. Dkt. No. 62. There is no need for the court to allow the petitioner to supplement the record with an email from the court reporter—the docket itself shows that this court could not have seen the transcript until six months after it adopted the report and recommendation.

As to the petitioner's broader claim that the court was derelict in adopting the report and recommendation without reviewing that transcript, again, that is not relevant to the question of whether the petitioner's appellate counsel was ineffective in failing to raise on appeal the premature adoption of the report and recommendation. But the court notes that while it did not have the transcript of the plea colloquy at the time it adopted the report and

recommendation, it *did* have available the plea agreement (dkt. no. 30), the minutes of the change-of-plea hearing (dkt. no. 31) and Judge Jones's written report and recommendation (dkt. no. 32). The plea agreement in Case No. 16-cr-100 was signed by Martin Pruhs, under a paragraph that stated, "I am the defendant's standby counsel. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one." Dkt. No. 30 at 15. The minutes of the change-of-plea hearing (which covered the pleas in both Case No. 15-cr-115 and Case No. 16-cr-100) indicate that the petitioner was present at the hearing ("PRO SE"), and that Attorney Martin J. Pruhs was present as standby counsel. Dkt. No. 31 at 1. Nothing in the minutes indicates that the petitioner objected that Attorney Pruhs was not his standby counsel in Case No. 16-cr-100. Nothing in the minutes indicates that he objected to the fact that Attorney Pruhs had signed the plea agreement in Case No. 16-cr-100. Nor did Judge Jones indicate in his report and recommendation that the petitioner had objected to Attorney Pruhs being present at the change-of-plea hearing or signing the plea agreement. Dkt. No. 32.

The petitioner provides no authority—no case law or statute—supporting his claim that before this court could adopt Judge Jones's report and recommendation, it was required to read the transcript of the change-of-plea hearing. The court is unaware of such authority. But even if the court *had* had the transcript and *had* read it, the court would have had no reason to refuse to accept Judge Jones's report and recommendation. That transcript shows that at the very beginning of the hearing, the following exchange occurred:

> THE COURT: All right. [Petitioner], I'm going to be going over the terms of this agreement to make sure that your plea is knowing and intelligent; that you have a full appreciation of what you're pleading

to today and that you understand the consequences of your conduct. All right?

[THE PETITIONER]: Yes, sir.

THE COURT: I understand that you have standby counsel. And Mr. Pruhs, please accept the gratitude of the court, both Judge Stadtmueller, Judge Pepper and myself, for your serving in that role. And I will impose on you, [Petitioner], if you do have questions about something during this what we call plea colloquy, if you have a question at all, please, please lean over to Mr. Pruhs and he will give you his best professional advice. All right?

[THE PETITIONER]: Yes, sir.

THE COURT: Mr. Pruhs, is that acceptable to you?

MR. PRUHS: Yes, it is. Thank you.

THE COURT: Thank you very much.

Dkt. No. 62 at 3, lines 1-20.

This exchange shows that Judge Jones was under the impression that Attorney Pruhs was acting as standby counsel in both Case No. 15-cr-115 and Case No. 16-cr-100. The petitioner not only could have corrected Judge Jones if that had been incorrect, but Judge Jones *urged* the defendant to speak to Attorney Pruhs if he had any questions about anything at all. The petitioner now makes much of the fact that there is no order in Case No. 16-cr-100 appointing Attorney Pruhs as standby counsel, but he said nothing about it when Judge Jones gave him the chance.

Nor has the petitioner provided any caselaw or statutory authority for his assertion that even though on September 29, 2015, Magistrate Judge Nancy Joseph had conducted a thorough Faretta self-representation colloquy with the petitioner in relation both to Case No. 15-cr-115 and Case No. 15-cr-137 (Case No. 15-cr-115 at Dkt. No. 42), a judge needed to conduct another Faretta colloquy with the petitioner in Case No. 16-cr-100 when, at his arraignment on

35

July 13, 2016, he appeared before Judge Jones (with standby counsel Anderson Gansner) and indicated that he was representing himself in his other cases and that he wanted to represent himself in Case No. 16-cr-100, as well. See Case No. 16-cr-100, Dkt. No. 6 at 1. In different post-briefing motions, the petitioner cited United States v. Fazzini, 871 F.2d 635, 643 (7th Cir. 1989). Dkt. No. 48-1 at 11. That case does not support the petitioner's argument. In Fazzini, The Seventh Circuit stated,

> The defendant claims that even if he did waive his right to be represented by counsel at trial, the district court still should have inquired as to whether he wanted to be represented by counsel at sentencing. According to the defendant's view of the law, it is incumbent upon the judge to ensure that at each critical phase of the proceedings, the defendant is asked whether he wants to continue without counsel. We disagree. Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver. *Schell v. United States*, 423 F.2d 101, 103 (7th Cir. 1970); *Harig v. Wolff*, 414 F. Supp. 290, 296 (D. Neb. 1976).

The court will deny the motion seeking leave to file recently obtained evidence. Dkt. No. 46.

E.     Post-Conviction Request for Grand Jury Transcripts (Dkt. No. 47)

The petitioner asserts that "it appears the same Grand Jury Foreperson signed both the 16-CR-100-PP Bakley, and 15-CR-115-JPS Farmland Superseding indictments, and consequently, the same grand jury was used to indict Defendant in both cases in violation of Defendants Fifth Amendment Grand Jury right to be indicted by an independent and unbiased grand jury." Dkt. No. 47 at 2. He says he wants to find out whether the grand jury that indicted him in Case No. 16-cr-100 "heard evidence supporting the allegation that Defendant acted 'knowingly' or 'with intent' as those are essential element [sic] of the crime of wire fraud and do not appear in the 16-CR-100-PP Bakley

Indictment." Id. at 5. The petitioner argues that if the indictment does not reflet these "essential elements," then the grand jury could not have "determined" them; he says he was never made aware of this "defect" in the indictment and that "this is yet another reason the 16-CR-100-PP Bakley case conviction must be vacated and remanded." Id. The petitioner also says that he is entitled to the grand jury transcripts "to assure the accuracy and truthfulness of the testimony of witness who will testify at the upcoming 19-cv-1319 temporary restraining order hearing." Id.

This request is, if possible, even less relevant to the issue the petitioner has raised in this §2255 petition than the previous requests. It has no bearing on his claim that his appellate counsel was ineffective in failing to raise on appeal the premature adoption of the report and recommendation. In his original §2255 petition, the petitioner asserted that the indictment was defective because it did not allege that he committed the offenses knowingly and intentionally. Dkt. No. 1. But he left that issue out of his amended petition—perhaps because he knew he had not raised it on appeal to the Seventh Circuit, perhaps for other reasons. Dkt. No. 19. Even if he had raised the issue on appeal and included the issue in his amended petition, the petitioner would not need the grand jury transcripts to show that the indictment did not use the words "knowingly" or "intelligently"—the face of the indictment would show that. As for the petitioner's argument that he needs the grand jury testimony to ensure that witnesses in Case No. 19-cv-1319 testify truthfully, the court has not scheduled that hearing, does not know who will testify at that hearing and does not know whether any witness who testifies at that hearing testified before the grand jury in Case No. 16-cr-100.

37

The court will deny the post-conviction request for grand jury transcripts. Dkt. No. 47.

F.    Motion Seeking Leave to Supplement §2255 Motion (Dkt. No. 48)

Finally, the petitioner wants to supplement his §2255 motion with materials he received from Wisconsin's Office of Lawyer Regulation in response to a complaint he filed with that agency against Attorney Pruhs, indicating that Attorney Pruhs was appointed standby counsel only in Case No. 15-cr-115. Dkt. Nos. 48, 48-1. While he alleges that one of these documents—a letter dated January 19, 2017 from Donovan and Pruhs to Judge Stadtmueller—is fraudulent, he nonetheless argues that the letter proves that Donovan and Pruhs were not appointed as standby counsel in Case No. 16-cr-100. Id. at 2-3. The petitioner emphasizes that he was not represented by counsel at the sentencing hearing in Case No. 16-cr-100—the one where he tried to withdraw his guilty plea—and he argues that he was deprived both of effective assistance of counsel and a valid waiver of counsel at the time he tried to withdraw his guilty plea. Dkt. No. 48 at 4. He asserts that Donovan and Pruhs left him without counsel at the sentencing hearing. Id. at 5-6.

This request, and these documents, have nothing to do with the petitioner's claim that his appellate counsel was ineffective in failing to raise on appeal the premature adoption of the report and recommendation to accept the petitioner's guilty plea. The petitioner did not raise this issue on appeal, so he could not have raised it in this §2255 petition unless he could show cause and prejudice. And as the court has explained, the petitioner could have spoken up at the change-of-plea colloquy and advised Judge Jones that Attorney Pruhs was not acting as his standby counsel in Case No. 16-cr-100. He did not do so.

The court will deny the motion seeking leave to supplement the §2255 motion. Dkt. No. 48.

## III. Analysis

A. <u>Standard</u>

Section 2255(a) of Title 28 provides that a federal prisoner

> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" <u>United States v. Coleman</u>, 763 F.3d 706, 708 (7th Cir. 2014) (quoting <u>Blake v. United States</u>, 723 F.3d 870, 878-79 (7th Cir. 2013)).

The petitioner asserts that his appellate counsel's failure to challenge this court's premature adoption of Judge Jones's report and recommendation was constitutionally defective in violation of the Sixth Amendment. "Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, [the petitioner] must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in prejudice." <u>United States v. Berg</u>, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)). "The performance prong of *Strickland* requires a [petitioner] to show 'that counsel's representation fell below an objective standard of reasonableness.'" <u>Lafler v. Cooper</u>, 566 U.S. 156, 163 (2012) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985)). "The question is whether an attorney's representation amounted to incompetence under 'prevailing

Case 2:19-cv-00752-PP   Filed 01/31/22   Page 39 of 45   Document 54

professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting Strickland, 466 U.S. at 690). "To establish Strickland prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lafler, 566 U.S. at 163 (quoting Strickland, 466 U.S. at 694 (1984)).

"[A]ppellate counsel's performance is deficient under Strickland only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." Makiel v. Butler, 782 F.3d 882, 898 (7th Cir. 2015). "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable." Id. (quoting Shaw v. Wilson, 721 F.3d 908, 915 (7th Cir. 2013)). "An attorney is not ineffective for failing to raise a meritless argument." Washington v. Boughton, 884 F.3d 692, 701 (7th Cir. 2018).

B.    Application

The petitioner's appellate counsel was not ineffective by failing to challenge this court's adoption of Judge Jones's report and recommendation. Under 28 U.S.C. §636(b)(1)(C),

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Judge Jones issued his report and recommendation on December 7, 2016; this court issued its order adopting that report and recommendation on December 20, 2016—thirteen days later. The petitioner is correct that the court

40

prematurely adopted the report and recommendation. It shorted the petitioner one day within which to object.

But from a practical standpoint, the petitioner could have objected to the report and recommendation any time during the thirteen-day period the court provided. He did not, even though he claims that the day after the plea colloquy, he advised standby counsel of his desire to withdraw the plea. The petitioner *did* find the time to file a pleading during that thirteen-day period. On December 12, 2016, the court received from the petitioner (not standby counsel) a request for permission to travel to Palm Desert California. Case No. 16-cr-100 at Dkt. No. 33. While he prioritized making sure that he could get permission to travel out of state, he did not prioritize filing an objection to the report and recommendation.

The petitioner stresses that "[i]t is undeniable and easy to see that [he] desired to fully object and rescind his offer to plead guilty." Dkt. No. 20. He does not point to anything in the record prior to the March 23, 2017 sentencing hearing that evidences that "undeniable "and "easy-to-see" fact. On December 23, 2016, the petitioner appeared before Magistrate Judge Nancy Joseph for a hearing on his request to travel to Palm Desert. Case No. 16-cr-100 at Dkt. No. 37. The minutes contain no mention of the plea or the petitioner's desire to withdraw it. The first mention in the record of the petitioner wanting to change his guilty plea is in the minutes of the March 23, 2017 sentencing hearing—three and a half months after Judge Jones issued the report and recommendation and three months after this court adopted it. Case No. 16-cr-100 at Dkt. No. 47, page 1.

The petitioner argues that because 28 U.S.C. §636(b)(1) allows a party to object to a report and recommendation within fourteen days, he had an

41

"absolute right" to rescind his guilty plea for fourteen days, and that this court's acceptance of his guilty plea before fourteen days passed violated his right to due process. Dkt. No. 29 at 2-3. The petitioner has not cited—and this court is not aware of—any authority stating that §636(b)(1) provides someone who enters a guilty plea before a magistrate judge with an absolute right to rescind that plea.

In fact, withdrawing a guilty plea is not an easy proposition. "Under Federal Rule of Criminal Procedure 11(d)(2)(B), once a court accepts a guilty plea, the defendant may withdraw it only for a 'fair and just reason.'" United States v. Merrill, ___ F.4th ___, 2022 WL 151984, at *2 (7th Cir. Jan. 18, 2022). Judge Jones placed the petitioner under oath at the plea colloquy, Case No. 16-cr-100, Dkt. No. 62 at 3, lines 23-25; 4, lines 1-4. When the petitioner told Judge Jones that he understood his rights, that he was pleading guilty voluntarily and that the government could have proven beyond a reasonable doubt the charges to which he was pleading guilty, the petitioner was under oath. Courts "give special weight to a defendant's sworn testimony in a Rule 11 plea colloquy." United States v. Smith, 989 F.3d 575, 582 (7th Cir. 2021). "That testimony is presumed true, and the defendant bears a heavy burden to overcome this presumption." Id. (citing United States v. Chavers, 515 F.3d 722, 724 (7th Cir. 2008)). "[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." United States v. Peterson, 414 F.3d 825, 827 (7th Cir. 2005). All the petitioner's subsequent protestations of innocence to the contrary, he told Judge Jones *under oath* that he committed the crimes he now denies.

42

Section 636(b)(1) does give a party the ability to object to a magistrate judge's report and recommendation. But the petitioner has not explained what objections he would have raised to Judge Jones's report and recommendation had he been given the full fourteen days (instead of the thirteen days the court gave him). In his brief in support of his petition, the petitioner states that "[i]t is clear from the record that Petitioner was not satisfied with the magistrate's plea colloquy—insisting for so long he was innocent." Dkt. No. 20 at 5. But the petitioner does not say what it was that Judge Jones did wrong at the plea colloquy.

Because the petitioner has not identified any errors by Judge Jones at the plea colloquy, he has not demonstrated that his appellate counsel's failure to raise the premature acceptance of the report and recommendation resulted in prejudice.[3] He has not demonstrated a reasonable probability that if appellate counsel had raised this issue before the Seventh Circuit, the outcome of his case would have been different.

Finally, as the court has noted, the Seventh Circuit denied a certificate of appealability and found no substantial showing of a denial of a constitutional right from Judge Stadtmueller's rejection of the identical §2255 claim in Case No. 19-cv-1694. Given that, this court cannot conclude that the argument

---

[3] The court does not mean to imply that it believes that appellate counsel's performance was defective; it does not. The petitioner told this court at his sentencing hearing that the reason he had pled guilty was because the trial in front of Judge Stadtmueller was not going well for him. He told Judge Jones, under oath, during a very thorough plea colloquy during which he had access to standby counsel if he had any questions, that the government could prove beyond a reasonable doubt that he had committed the crimes to which he was pleading guilty. His later explanation to this court of his version of events stretches credulity. For appellate counsel to argue to the Seventh Circuit that this court committed constitutional error by accepting the petitioner's plea a day prematurely could arguably have been construed as frivolous.

would have been both "obvious" and "clearly stronger" than the arguments raised on direct appeal in this case. <u>Makiel</u>, 782 F.3d at 898. Any error resulting from this court's adoption of Judge Jones's report and recommendation one day too early was harmless.

The court will grant the motion to dismiss.

## IV.    **Certificate of Appealability**

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petitioner should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists courts not debate that the petitioner's §2255 claim is without merit.

## V.    **Conclusion**

The court **GRANTS** the respondent's motion to dismiss the petitioner's §2255 motion. Dkt. No. 30.

The court **ORDERS** that the petitioner's amended motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255 is **DENIED**. Dkt. No. 19.

The court **DENIES** the petitioner's motion to appoint counsel. Dkt. No. 41.

The court **DENIES** the petitioner's motions to expedite. Dkt. Nos. 42, 43.

44

The court **DENIES** the petitioner's motion requesting copies of CJA 20 vouchers. Dkt. No. 45.

The court **DENIES** the petitioner's motion for leave to file recently obtained evidence. Dkt. No. 46.

The court **DENIES** the petitioner's post-conviction motion to obtain grand jury transcripts. Dkt. No. 47.

The court **DENIES** the petitioner's motion to supplement §2255 motion. Dkt. No. 48.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 31st day of January, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**